CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

MAY 0 8 2023

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:16-cr-00057 |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| BARRY RAY MILES, JR., | ) | Chief United States District Judge |
| Defendant-Petitioner | ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Barry Ray Miles' pro se motions for a sentence reduction. ECF Nos. 281, 288, 306.[1] The government has responded in opposition. ECF Nos. 287, 291. For the reasons stated herein, the court will **DENY** Miles' motions.

## I. Background

On January 12, 2017, a Grand Jury returned a second superseding indictment charging Miles and two co-defendants with crimes related to guns and drugs. Second Superseding Indictment, ECF No. 34. Miles was charged with conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and possessing with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Count 3); using and brandishing a firearm during and in relation to a drug trafficking crime for which he could prosecuted in a court of the United States, namely, as alleged in Count 3, all in violation of 18 U.S.C. § 924(c) (Count 4); and knowingly and intentionally distributing a

---

[1] The Federal Public Defender was given opportunities to file supplemental pleadings on Miles' behalf but declined to do so. ECF Nos. 282, 284, 289, 290.

mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 5).

On May 12, 2017, Miles entered into a Rule 11(c)(1)(C) plea agreement in which he pled guilty to Counts 3 and 4 of the second superseding indictment. Plea Agreement, ECF No. 107 at 1. The parties agreed to a sentence of between 204 and 240 months. Id. at 2.

On Count 3, he faced a statutory term of 10 years to life and a guidelines range of 188 to 235 months. 18 U.S.C. § 841(b)(1)(A); Presentence Investigation Report (PSR), ECF No. 137 ¶ 93, 94. The guidelines range was based on the drug weight amount of 500 grams of methamphetamine, which gave Miles a base offense level of 34, reduced by three levels for acceptance of responsibility to a total offense level of 31. His offense level of 31 along with his criminal history category of VI rendered a sentencing range of 188 to 235 months. PSR, ECF No. 137 ¶ 94.

On Count 4, Miles faced a 7-year minimum term of imprisonment and a maximum of life under both the statute and the sentencing guidelines. United States Sentencing Commission Guidelines Manual, § 2K2.4(b) (Nov. 2016) (USSG or guidelines); 18 U.S.C. § 924(c)(1)(A)(ii); PSR, ECF No. 137 ¶ 93, 94. The term of imprisonment on Count 4 was to be imposed consecutively to any other counts. 18 U.S.C. § 924(c)(1)(D)(ii).

On July 31, 2017, Miles was sentenced to a term of 156 months on Count 3 and 84 months on Count 4, to run consecutively, for a total of 240 months, to be followed by a 5-

year term of supervised release. J., ECF No. 135. Miles has been in custody since November 16, 2016 and has a projected release date of August 16, 2034.[2]

## II. Grounds for Relief

Miles is proceeding pro se and the court will construe his pleadings liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). He makes several arguments in support of his request for a sentence reduction. In his first motion, Miles asserts without elaboration that he is entitled to a reduction in his sentence based on two "extraordinary and compelling" reasons: the "minus two points all drugs amendment on the dropping of the mandatory minimums of drugs" as well as his rehabilitation programming. Mot., ECF No. 281. The court interprets this as a request for a reduction based on Amendment 782 to the United States Sentencing Guidelines supported by evidence of rehabilitation since Miles has been incarcerated.

In Miles' second motion for a sentence reduction, ECF No. 288, he expands on his claim that he is entitled to relief under Amendment 782 and then argues that the sentencing factors found at 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction. Id. Miles next argues that he is entitled to compassionate release because of changes that the First Step Act made to enhanced sentences under 21 U.S.C. § 841. He claims that he consented to a much longer sentence as part of the Plea Agreement because he was threatened with a § 851 sentence enhancement that would have increased his sentence substantially. Id.

In Miles' third motion, ECF No. 306, he argues that he is entitled to compassionate release because of changes in the application of the career offender enhancement brought

---

[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Barry Ray Miles") (last viewed April 21, 2023).

about by United States v. Norman, 935 F.3d 232, 236–38 (4th Cir. 2019). Miles also argues that the sentence he received was longer than the national average sentence imposed on defendants who were "similarly situated" to him and engaged in the same conduct. He also cited statistics showing that African Americans are treated more harshly than white defendants when it comes to the enforcement of drug laws. He further argues that he received a disproportionately longer sentence than his co-defendants "even when some were admittedly as culpable." Id. at 10. In addition, Miles argues that he is entitled to compassionate release based on his susceptibility to COVID-19. Finally, Miles argues that he is entitled to a sentence reduction so that he can care for his mother and his wife, both of whom have health issues.

## A. Amendment 782

Miles argues that he is entitled to a reduction in his sentence based on Amendment 782 of the sentencing guidelines, which reduced by two levels those offense levels assigned to drug quantities in USSG §§ 2D1.1 and 2D1.11. USSG App. C amend. 782 (2014). The amendment was issued on November 1, 2014, but the United States Sentencing Commission made Amendment 782 apply retroactively by listing it in subsection (d) of § 1B1.10 of the guidelines manual. United States v. Muldrow, 844 F.3d 434, 436 (4th Cir. 2016). Therefore, defendants who were sentenced before Amendment 782 was adopted can move for a reduction in their sentence if it was based on drug weight.

Amendment 782 offers no relief to Miles in this proceeding because he was sentenced after it was issued and in accordance with it. In other words, based on the 500 grams of methamphetamine for which Miles was held responsible, his base offense level was 34. See PSR, ECF No. 137 ¶ 19; USSG § 2D1.1(c)(3). If Miles had been sentenced before Amendment

4

782 was issued, his base offense level would have been 36. See USSG § 2D1.1(c)(2) (Nov. 2013). Because Miles is not entitled to additional relief under Amendment 782, the court must **DENY** his motion for a sentence reduction on this basis.

Also, if Miles is arguing that he is entitled to a reduction in his sentence because he is participating in rehabilitation programming, consideration of the positive improvements he has made while incarcerated would only come into play if he were eligible for a sentence reduction. See 18 U.S.C. § 3582(c)(2). Because he is not eligible for a sentence reduction based on Amendment 782, his rehabilitation while in prison, though laudable, is an insufficient basis on which to grant a sentence reduction.

### B. Compassionate Release

Turning to Miles' claims that he is entitled to compassionate release, the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

5

Accordingly, Miles' requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131.

In its responses to Miles' first two motions, the government argues that Miles did not exhaust his administrative remedies because although he submitted a request for compassionate release to the warden at his facility on August 21, 2020, he based his request on a need to care for his mother and wife and did not raise the same issues regarding his sentence that he has raised to the court. Resp., ECF Nos. 281, 287-1, 291 at 3–6. However, the Fourth Circuit has clarified that a defendant is not required to exhaust his administrative remedies with the Bureau of Prisons (BOP) at all beyond making the initial request for compassionate release. Rather he may move for compassionate release after either fully exhausting all his administrative rights to appeal a failure of the BOP to bring a motion on his behalf or the lapse of 30 days from the receipt of the request, whichever is earlier. United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022) (citing Muhammad, 16 F. 4th at 131, and 18 U.S.C. § 3582(c)(1)(A)). "Therefore, we see no reason to limit [a] motion for compassionate

release in the district court to only those grounds for compassionate release . . . identified in [a] request to the BOP." Id. at 268. Accordingly, the court finds that Miles has satisfied the statute's exhaustion requirements.

The court must next consider whether there are any "extraordinary and compelling reasons" that would warrant "reduc[ing] the term of imprisonment" imposed in Miles' case. 18 U.S.C. § 3582(c)(1)(A). The USSG § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). See USSG § 1B1.13 at cmt. n.1(A)–(D).

In United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020), the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so holding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement, finding that the policy statement applied only to motions for compassionate release filed by the BOP. See discussion, McCoy, 981 F.3d at 280–84. However, the policy statement "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

The McCoy court examined the changes to 18 U.S.C. § 924(c) brought about by the First Step Act. Prior to the First Step Act, simultaneous convictions, and subsequently sentences, under § 924(c) were "stacked," meaning that "a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." Id. at 275. The First Step Act changed the sentencing structure for multiple convictions under § 924(c)—the statute now requiring a new violation "that occurs after a prior conviction under [the] subsection has become final" to trigger the mandatory minimum sentence of 25 years. 18 U.S.C. § 924(c)(i). "Under § 403 of the First Step Act, that is, the 25-year mandatory minimum is 'reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.'" McCoy, 981 F.3d at 275 (quoting United States v. Jordan, 952 F.3d 160, 171 (4th Cir. 2020)). The practical result of the change is that where defendants once faced a mandatory minimum sentence of 25 or 30 years when convicted of two firearms offenses in a single prosecution, they now face a mandatory minimum sentence of 5 years on each offense, for a total of 10 years. United States v. Redd, 444 F. Supp. 3d 717, 720 (E.D. Va. Mar. 16, 2020). The McCoy court, granting reduction of the defendants' sentences, found that a "gross disparity" between a defendant's sentence at the time of conviction and the sentence that would be imposed under current law can be considered an "extraordinary and compelling reason" for granting compassionate release. McCoy, 981 F.3d at 285–86.

In this case, Miles argues that, based on two changes in the law, if sentenced today he would receive a substantially shorter sentence, which would constitute a "gross disparity"

between the sentence he received in 2017 and the sentence he would receive today for the same conduct. However, neither change he cites would have affected the sentence he received.

### (1) Changes to 21 U.S.C. § 841

Changes to 21 U.S.C. § 841 brought about the First Step Act mean that in order for a sentence under the statute to be increased from a mandatory 10-year minimum sentence to a 20-year minimum sentence based on a prior offense, a defendant must have a prior conviction for a "serious drug offense." Prior to the First Step Act, Section 841(b)(1)(A) provided that if a person violated the statute "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2010). The First Step Act changed the triggering predicate crime from a "felony drug offense" to a "serious drug felony" or "serious violent felony." 21 U.S.C. § 841(b)(1)(A) (2018). The term "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct related to narcotic drugs . . . ." 21 U.S.C. § 802(44). The term "serious drug felony" is defined as an offense described in 18 U.S.C. § 924(e)(2) for which the offender served a term of imprisonment of more than 12 months. 21 U.S.C. § 802(57). Thus, today, in order for a sentence to be increased under § 841(b)(1)(A), a person must have a prior conviction for a "serious drug felony" rather than a "felony drug offense," meaning he must have served more than 12 months on the offense.

This court and others have applied the McCoy reasoning when considering motions for compassionate release founded on the claim that a defendant would no longer be subject

to a longer sentence based on a § 851 enhancement. See, e.g., United States v. Gamboa, No. 2:08-cr-00151-2, 2022 WL 275528 (S.D.W.V. Jan. 28, 2022); United States v. Richards, No. 3:11-CR-31, 2021 WL 3861599 (W.D. Va. Aug. 30, 2021); Babb v. United States, No. ELH-04-0190, 2021 WL 2315459, at *12 (D. Md. June 4, 2021); and United States v. Williams, No. 5:12cr14, 2020 WL 5834673 (W.D. Va. Sept. 30, 2020).

However, Miles' sentence was not increased based on a prior offense. The government never filed a notice under 21 U.S.C. § 851 that it intended to seek an increased sentence on the § 841 violation because of one or more prior offenses.[3] This is reflected in the PSR, which notes that the statutory minimum term of incarceration that Miles faced was 10 years, rather than 20 years. PSR, ECF No. 137 ¶ 93. Miles argues that he was threatened with an enhancement and that the change in the law would have taken the weight of the threat off the plea-bargaining table. However, while the government did point out to the court at sentencing that it could have sought a § 851 enhancement, Sentencing Tr., ECF No. 227 at 66–67, and while such an increased sentence would no longer be an option after the change to § 841, the government did not seek the enhancement in Miles' case.

Moreover, the plea agreement reflects that the parties agreed to a sentencing range of 204 to 240 months. A sentence of 204 months represented the statutory mandatory minimum sentence of 120 months on the § 841 charge and the mandatory minimum sentence of 84 months on the brandishing a weapon charge. Therefore, even if an implied threat of a § 851

---

[3] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

enhancement existed, it could not have affected plea negotiations as the parties agreed to the statutory minimum sentences as the bottom of the sentencing range in the plea agreement. Even without a threat of an § 851 enhancement, Miles could not have negotiated for a sentence lower than the statutory mandatory minimum. Accordingly, Miles' motion for compassionate release based on changes to 21 U.S.C. § 841 is **DENIED**.

### (2) Changes to the Career Offender Designation

Similarly without merit is Miles' argument that he is entitled to compassionate release because of changes to the application of the career offender enhancement brought about by Norman. Under USSG §4B1.1, a defendant is designated a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

In Norman, 935 F.3d at 236–38, the Fourth Circuit held that convictions for conspiracy to distribute drugs are no longer considered controlled substance offenses under USSG § 4B1.2. The court reasoned that because the "generic, contemporary meaning" of "conspiracy" requires an overt act, and "conspiracy" under § 846 does not require an overt act, § 846 criminalizes a broader range of conduct than that covered by generic conspiracy. Id.

Courts, including this one, have applied the reasoning in McCoy to motions for compassionate release seeking a reduced sentence based on the claim that after Norman, the defendant would not be considered a career offender. See, e.g., United States v. Gilmer, No. 5:00-cr-30053, 2022 WL 1423615 (W.D. Va. May 5, 2022); United States v. Cooper, No.

11

1:10CR00043-001, 2022 WL 1302708 (W.D. Va. May 2, 2022); United States v. Morris, No. 4:13cr25, 2022 WL 1285183 (E.D. Va. Apr. 29, 2022); United States v. Williams, No. 14-cr-428, 2021 WL 5827327 (E.D. Va. Dec. 8, 2021); United States v. Fennell, 570 F.Supp.3d 357 (W.D. Va. 2021); United States v. Richards, No. 3:11-cr-31, 2021 WL 3861599 (W.D. Va. Aug. 30, 2021); and United States v. Trice, No. 7:13-CR-34-1001, 2021 WL 402462 (W.D. Va. Feb. 3, 2021).

However, Miles was not sentenced as a career offender under USSG § 4B1.2 but was sentenced on drug weight. PSR, ECF No. 137 ¶ 25. Miles argues that without the possibility of a career offender designation, he could have gone to trial and challenged the conviction, and if convicted, he could have challenged the drug weight calculation. Mot., ECF No. 306 at 7. However, if Miles had gone to trial, he might not have received credit for acceptance of responsibility which would have increased his total offense level by 3 points and his guidelines range would have been 262 to 327 months. PSR, ECF No. 137 ¶¶ 95, 96. In addition, even if Miles considered the possibility of a career offender designation during plea negotiations and the court found that the career offender designation was not warranted after Norman, Miles' guidelines range would remain 188 to 235 months, or the range that was calculated in his case using drug weight to determine the offense level.

For these reasons, Norman offers Miles no relief. Accordingly, his motion for a sentence reduction based on changes to application of the career offender designation is **DENIED.**

12

### (3) COVID-19

Miles also argues that he is entitled to a sentence reduction based on the COVID-19 pandemic. He argues that as an African-American man between the ages of 35 and 44, he faces a statistically greater chance of falling seriously ill or dying from COVID-19 than a white man.

During the COVID-19 pandemic, this court found extraordinary and compelling reasons for compassionate release when an inmate showed both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. But the assessment of compassionate release claims based on COVID-19 changed with the advent of vaccines against the disease. According to the Centers for Disease Control and Prevention, all approved vaccines "reduce the risk of COVID-19, including the risk of severe illness," and "[i]n addition to data from clinical trials, evidence from real-world vaccine effectiveness studies show that COVID-19 vaccines help protect against COVID-19 infections."[4]

Miles does not argue and presented no evidence to the court that he himself suffers from a particularized susceptibility to COVID-19. And while there is no evidence before the court regarding whether Miles has been vaccinated, the court is aware that vaccinations against COVID-19 have been offered to BOP inmates. See also United States v. Martin, No. 1:05CR21, 2021 WL 1168696, at *2 (N.D.W.V. Mar. 26, 2021) ("[T]he BOP is aggressively vaccinating its staff and inmates to prevent the spread of COVID-19.") In

---

[4] See Ctrs. for Disease Control and Prevention, COVID-19 Vaccines Work, (updated June 22, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html.

addition, United States Penitentiary Atwater, where Miles is housed, currently has one inmate who has tested positive for COVID-19 and no staff members who have tested positive.[5] The lack of COVID-19 at the facility supports the conclusion that Miles is not at risk for contracting COVID-19 and that the measures taken at USP Atwater are appropriate to deter potential infection in the future. For these reasons, Miles has not demonstrated that his health concerns are sufficiently extraordinary or compelling to warrant any sentence reduction under 18 U.S.C. § 3582(c).

### (4) Caring for Family Members

Miles also asks the court to consider his need to care for his mother and spouse to be an extraordinary and compelling reason to grant compassionate release. He argues that his mother, who is in her fifties, has aged and needs Miles to live with her and perform the "everyday functions that are required to live in this society." He also asserts that his wife is having medical problems and needs assistance to "live a meaningful life in this society." Miles argues that he needs to be released from prison so that he can shop for them, take them to their appointments, and help pay bills. Mot., ECF No. 306 at 11–13.

The USSG § 1B1.13 policy statement describes only two family circumstances which present extraordinary and compelling reasons for compassionate release: (1) where the caregiver of the defendant's minor child dies or becomes incapacitated, or (2) where the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver. While not a binding determination, the Sentencing Commission considered family circumstance as a basis for compassionate release and did not extend those circumstances

---

[5] https://www.bop.gov/coronavirus/ (last viewed April 24, 2023).

to the caretaking of one's parents.[6]

The court empathizes with Miles' family situation and his desire to care for his mother and spouse, but his circumstance is not an extraordinary and compelling reason warranting a reduction in his sentence. Courts have occasionally found extraordinary and compelling circumstances in parental caretaking claims, but only in cases of extreme need where the defendant is the only possible caretaker of the parent.[7]

Miles does not assert that either his wife or his mother is incapacitated or that he is the only available caretaker. Miles attached a letter from his mother who stated that she is under stress and having panic attacks worrying that something is going to happen to Miles, but she does not assert that she is incapacitated or that she needs care that only Miles can provide. Letter, ECF No. 306-3. Although Miles did not identify his wife, he submitted a letter from a woman who identifies herself as his fiancé. In the letter, the woman states that she works as an officer manager for a church, indicating that she is not incapacitated or in need of live-in assistance. Letter, ECF No. 308 at 1, 5. Miles' wish to care for his wife and spouse is admirable, but does not present an extraordinary and compelling reason that warrants compassionate release.

### C. 18 U.S.C. § 3553(a) Factors

Even if the court had found that an extraordinary and compelling reasons exists for a sentence reduction, the court would have to consider "the § 3553(a) sentencing factors 'to the

---

[6] See United States v. Ingram, No. 1:18CR00019-002, 2021 WL 4812978, at *1 (W.D. Va. Oct. 15, 2021) ("There is no reason to assume that were it to revise its policy statement today, the Sentencing Commission would expand this [family circumstance] provision to include the caretaking needs of an defendants' parents.").

[7] See, e.g., United States v. Hicklin, No. 6:16-cr-2, 2020 WL 7406791, at *3 (W.D. Va. Dec. 11, 2020) (granting compassionate release where the defendant was the only possible caretaker for an ailing mother who herself took care of a disabled adult daughter).

extent that they are applicable' in deciding whether to exercise its discretion to reduce the

defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021)

(quoting 18 U.S.C. § 3582(c)(1)(A)). The relevant factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .
>
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Looking first at the nature and circumstances of the offense, over a 15-month period from October 2015 through December 2016, Miles and two co-defendants distributed more than 500 grams of methamphetamine in the Western District of Virginia. Miles regularly carried a firearm as part of his drug distribution activities and he brandished a firearm on at least two occasions in furtherance of the conspiracy. PSR, ECF No. 137, ¶¶ 7–11. On November 26, 2015, police responded to a complaint of shots fired. Police located Miles at a residence and found two firearms in the basement, one of which had Miles' fingerprint on the extended magazine. These facts show that not only did Miles contribute to the devastation wrought by methamphetamine in the community, he also created a threat of grave danger with his willingness to defend his drug business with violence. Therefore, the nature and circumstances of the offense weigh heavily against a sentence reduction.

Turning to the history and characteristics of the defendant, Miles had an extensive criminal history for a young man, starting when he was a juvenile and ending approximately 10 years later with his arrest in this case. Convictions included driving on a suspended license, eluding a law enforcement officer, petit larceny, drinking while operating a vehicle, affixing other signature, grand larceny, carrying a concealed weapon, possession of marijuana, possession of cocaine with intent to distribute, contributing to the delinquency of a minor, obstructing justice without force, and multiple counts of contempt of court and driving on a suspended or revoked license. While incarcerated, Miles had disciplinary charges for mail abuse, disrupt monitoring in 2021, and possessing drugs or alcohol in 2020. ECF No. 288 at 15. It is unclear whether he has other disciplinary infractions because the report he provided covered only a six-month period ending on March 30, 2021. Id.

On a more positive note, Miles has taken a number of classes while incarcerated and is participating in the Challenge Program offered by the BOP. The Challenge Program is a cognitive-behavioral residential treatment program developed for male inmates and provides treatment to high security inmates with substance abuse problems, mental illness, or both. First Step Act Approved Programs Guide, U.S. Dept. of Justice, Federal Bureau of Prisons 9 (2020). He also participates in the Threshold Program, which is a faith-based program that teaches values, leadership, and life skills. In addition, Miles wrote the court a heartfelt letter in which he expressed remorse for his actions and a commitment to becoming a better person for his family and community. Letter, ECF No. 306-4.

To be sure, the court is impressed by the fact that Miles has taken many classes and appears to be committed to improving himself and becoming a law-abiding citizen. However, as recently as 2021 he showed a disregard and lack of respect for prison rules as reflected by his disciplinary history. Taken as a whole, Miles' history and characteristics both before his arrest in 2016 and his since he has been incarcerated weigh neither in favor nor against a sentence reduction.

The court next looks at the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. At the sentencing hearing, the court considered Miles' consistent pattern of drug dealing, threats of violence and the involvement of firearms when it imposed the 2-year sentence. Sentencing Tr., ECF No. 227 at 77. The court added: "I do believe it's a just punishment. I believe it will provide for deterrence to [him] and others. It will send a strong

message that this kind of behavior is not tolerated. ... [I]t will protect the public for that period while he is gone." Id. at 78. The court finds that Miles' current sentence continues to satisfy these goals of punishment and that imposing a shorter sentence at this time would undermine the goals.

Regarding the kinds of sentences available and the applicable guidelines range, if sentenced today, Miles would face the same statutory sentences and guidelines range that he faced when sentenced originally: a 7-year statutory minimum term of imprisonment and a maximum of life under both the statute and the sentencing guidelines on Count 4, and a statutory term of 10 years to life and a guidelines range of 188 to 235 months on Count 3, with the term of imprisonment on Count 4 to be imposed consecutively to any other counts. This factor weighs against a sentence reduction.

Considering the need to avoid unwarranted sentencing disparities, Miles argues that there is a disparity in the sentence he received and the national average sentence for drug trafficking offenses. He cited United States v. Ligon, No. 1:19CR314-JRA-1, 2020 WL 1140074, at *12 (N.D. Ohio March 9, 2020) for its notation that the national average sentence for defendants convicted of drug trafficking with a criminal history of IV is 93 months (citing United States Sentencing Commission data compilations). However, this statistic does not help Miles who has a criminal history category of VI. As set forth above, the guidelines range for Miles' drug trafficking offense was 188 to 235 months based on drug weight and his

criminal history category of VI. The court sentenced him to 156 months on the drug count, which was 24 months below the bottom of his guidelines range.

Miles also argues that African-American defendants receive disproportionately harsher sentences than white defendants. However, the research and cases cited by Miles are limited and not directly related to the facts of the case at bar. As such, the authority is not persuasive in the context of determining whether the sentence Miles received in this case created an unwarranted sentencing disparity in the context of a compassionate release motion.

Miles further argues that to leave his sentence at 20 years creates a sentencing disparity between him and his codefendants, because "after all, they all committed the same offense." Mot., ECF No. 288 at 7. Miles correctly recites that one codefendant received a 90-month sentence while another received a 168-month sentence, and that Miles' sentence was higher at 240 months. However, review of the codefendants' sentences indicates that they were sentenced based on the statutory sentencing ranges applicable to their charges and the guidelines sentencing ranges based on their offenses and criminal histories. See PSR for Christopher Allen Hayth, ECF No. 240 and PSR for Doshay Antwan Smith at ECF No. 249. For these reasons, the § 3553(a) factors related to disparities in sentences weigh against a sentence reduction. None of the other factors weigh in favor or against a sentence reduction.

## III. Conclusion

For the above-stated reasons, the court **DENIES** Miles' motions for compassionate release, ECF Nos. 281, 288, 306. Miles did not show evidence of an extraordinary and compelling reason that would justify a sentence reduction and even if he had done so, the § 3553(a) factors, taken together, weigh against his release.

The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: *May 3, 2023*

Michael F. Urbanski
Chief United States District Judge